*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

MENDEL EPSTEIN,
        Defendant.

Crim. Action No.: 14-287 (FLW)

OPINION

**WOLFSON, Chief Judge:**

Apprehensive of the spread of COVID-19, a highly infectious respiratory virus, in the detention facility where defendant Mendel Epstein ("Defendant") is currently housed, he moves for immediate compassionate release under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). Currently, Defendant is serving a lengthy prison sentence at FCI Otisville Camp ("Otisville"), following his conviction for conspiracy to commit kidnapping. In his motion, Defendant requests that the Court modify his sentence and order his immediate release from custody in light of the heightened risk to him posed by the spread of COVID-19, based on his age and other severe health-related issues. The Government has submitted an opposition to Defendant's motion, in which it argues that the Court lacks authority to act on Defendant's motion at this time, and Defendant has filed a reply. For the reasons discussed below, Defendant's motion is **DENIED** for failure to exhaust administrative remedies; however, Defendant may renew his request upon exhaustion, if necessary.

**I.    BACKGROUND**

On April 21, 2015, Defendant was convicted of conspiracy to commit kidnapping. (*See* Jury Verdict as to Mendel Epstein, ECF No. 352.) Defendant's conviction followed a jury trial

wherein he was charged with various kidnapping-related offenses, stemming from his involvement in a scheme through which he, along with others, sought to assist Jewish women in obtaining religious divorces from recalcitrant husbands. (*See* Amended Redacted Indictment, ECF No. 344.) On December 15, 2015, this Court sentenced Defendant to a term of imprisonment of 120 months. (*See* Judgment as to Mendel Epstein, ECF No. 394.) Defendant was also sentenced to 5 years of supervised release following his imprisonment, and he was ordered to pay a special assessment of $100. (*Id*.) Thus far, Defendant has served approximately 4 years of his sentence.

On March 27, 2020, Defendant submitted a request to the Warden at Otisville to file a F-8 form in order to petition for compassionate release. On April 3, 2020, counsel followed up with a letter to the Warden, submitting supporting exhibits, including certifications from two physicians who have reviewed Defendant's medical records. Because no response has been received, on April 7, 2020, Defendant filed the present "Motion for Compassionate Release," in which he seeks to be released from the custody of the Bureau of Prisons pursuant to the FSA. (ECF No. 471.) In his motion, Defendant reasons that his age (74 years old), serious medical conditions (hypertension, coronary artery disease, diabetes, renal impairment, and obesity), and inability to protect himself against infection and probable death from COVID-19, which has taken hold in his prison facility,[1] constitute "extraordinary and compelling reasons" for modifying his sentence under the statute. (*Id*. at 8-15.) Defendant also argues that the administrative exhaustion requirements of Section 3482(c)(1)(A) must be waived on the ground that compliance would be futile. (*Id*. at 2-8.)

---

[1] In his submission, Defendant paints a dark picture with respect to the transmission of COVID-19 virus amongst the inmate populations in several federal facilities across the country, including Otisville. Because I find that Defendant has failed to exhaust the necessary administrative remedies under the FSA, which act as a bar to relief on this application, I need not consider the conditions at Otisville at this time.

The Government opposes Defendant's motion, arguing that the Court has extremely limited statutory authority to change a sentence once it is imposed and that Defendant has failed to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). (ECF No. 472 at 1-5.) The Government also notes that the Bureau of Prisons has taken significant steps to limit movement of prisoners and to otherwise mitigate the risk of transmission of COVID-19 within its facilities, including where Defendant is housed. (*Id*. at 6-7.)

## II. DISCUSSION

Once a federally-imposed sentence commences, a district court has limited authority to modify that sentence. *See Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). One such authority for modifying a sentence is found in the recently-enacted FSA, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or [. . .]

18 U.S.C. § 3582(c) (emphasis added). Simply put, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(c)(1)(A). On this motion, the dispute centers on the first prong of § 3582(c)(1)(A).

Here, Defendant admits that he has not fully exhausted the necessary administrative remedies required by the FSA. In this regard, Defendant states that while he has, on March 27, 2020, submitted an administrative request to the Bureau of Prisons for compassionate release, he has not received a response prior to filing this motion. While exhaustion is not complete, Defendant, nevertheless, argues that in this Court's discretion, I may waive the exhaustion requirement in light of the extraordinary crisis caused by the COVID-19 pandemic. While I appreciate the dire circumstances that prisons across the country are facing, since those who are incarcerated are at a significantly higher risk of contracting an infectious disease, nonetheless, the FSA and the relevant Third Circuit precedent dictate my conclusion that I lack the authority to excuse exhaustion.

I begin my reasoning with the statutory text. Section 3582(c) makes clear that only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," may this Court entertain a motion for compassionate release by Defendant. *See United States v. Raia*, No. 20-1033, 2020 U.S. App. LEXIS 10582, at *5 (3d Cir. Apr. 2, 2020)(emphasis added). Based on that language, Congress, in enacting the FSA, has statutorily imposed exhaustion requirements before a defendant can petition in court. *See United States v. Gross*, No. 15-769, 2020 U.S. Dist. LEXIS

60554, at *5-6 (S.D.N.Y. Apr. 6, 2020)("[T]he statute includes an exhaustion requirement in recognition of the fact that [Bureau of Prisons] is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan.")(citations and internal quotations omitted). This explicit requirement is not susceptible to any judicially created exceptions.

While judicially created exhaustion requirements may sometimes be excused, it is well settled that a court may not ignore a statutory command, such as the one imposed in Section 3582(c)(1)(A). *See Massieu v. Reno*, 91 F.3d 416, 419 (3d Cir. 1996) ("Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts."). More recently, the Supreme Court reaffirmed that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement statutorily imposed by the Prison Litigation Reform Act of 1995 ("PLRA"). Analogous to the FSA, the PLRA mandates that a defendant exhaust "such administrative remedies as are available" before challenging prison conditions in a district court. 42 U.S.C. § 1997e(a). Rejecting the "freewheeling approach" adopted by some courts of appeals, under which certain prisoners were excused from exhausting administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id*. at 1856. The Court further stated:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. . . . But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

5

*Id*; *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

The same rule applies to the statutory text here. Section 3582(c)(1)(A) unambiguously instructs that a defendant can only bring a motion to court "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." This requirement is imposed by the statute itself, and is not judicially created. In fact, the Third Circuit recently addressed the issue of a defendant's failure to exhaust the administrative requirements of Section 3582(c)(1)(A) in an opinion issued on April 2, 2020. In *Raia*, the Government had appealed the sentence imposed by the district court following the defendant's conviction for unlawful election campaign activity (bribery). *Raia,* 2020 U.S. App. LEXIS 10582, at *3. Shortly after commencing his sentence, the defendant filed a motion in the district court for immediate release under the FSA due to the COVID-19 virus. However, the district court refused to address the motion, citing its lack of jurisdiction as a result of the appeal. Defendant, then, requested that the Third Circuit address the motion or remand the case to permit the district court to rule on his request for release. *Id*. at *4-5. The court declined, noting, *inter alia*, that the defendant—who was 68 years old and suffered from Parkinson's Disease and diabetes—had failed to exhaust his remedies with the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A). Notwithstanding defendant's age and medical issues, the Third Circuit found that the exhaustion requirement under the statute presented "a glaring roadblock foreclosing compassionate release at [that] point." *Id*. at *5-6. While *Raia* did not specifically address whether the FSA's exhaustion requirement may be subject to judicially created exceptions, it is implicit in

6

the circuit court's decision, since it refused to remand the case to the district court to consider the request for compassionate release, because "any remand would be futile," *id.* at *6, based upon the failure to exhaust. Indeed, the Third Circuit's strong language regarding exhaustion leaves no wiggle room.[2]

Lastly, Defendant refers the Court to 28 C.F.R. § 541.18, which requires the Warden to respond within three days if an inmate's request "is determined to be of an emergency nature which threatens the inmate's immediate health or welfare." (Def. Reply at 4.) Defendant contends that, because the Warden has failed to respond to his request within the allotted three-day period, "[t]he Court may interpret BOP's abandonment of its own internal review process requirements as dispensing with the exhaustion requirement." (*Id.* at 6.) To do otherwise, Defendant argues, would "render[] the provision for a three-day response to a request of this nature meaningless, as a strict interpretation means emergency situations will necessitate *over seventy days of waiting*." (*Id.* (emphasis added).)

Defendant's argument lacks merit for two reasons. First, under Section 3582(c)(1)(A), Defendant may bring his motion in the district court either "[1] after the defendant has fully exhausted all administrative rights . . . or [2] the lapse of 30 days from the receipt of such a request

---

[2] Instead of relying on cases that involve statutorily mandated exhaustion requirements, Defendant cites to cases that discuss judicially created exceptions to exhaustion. For example, Defendant argues that the Third Circuit in *Lyon v. U.S. Marshals*, 840 F.2d 202 (3d Cir. 1988), held that exhaustion is not required if doing so would be futile. *Id.* at 205. However, although *Lyon* dealt with administrative exhaustion in a *Bivens* action, the decision was rendered prior the enactment of the PLRA. After its enactment, as *Ross* makes clear, a defendant must comply with the exhaustion requirement in the PLRA in a *Bivens* action, and no exception can be created by courts. *See Ross*, 136 S. Ct. at 1855. Defendant's reliance on *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 238 (3d Cir. 2005), is similarly misplaced, because *Woodall* also involved judicially created futility exceptions to administrative exhaustion (as set forth in 28 C.F.R. § 542.10, *et seq.*) in the context of a § 2241 habeas petition, which statute does not impose any exhaustion requirement.

by the warden of the defendant's facility, whichever is earlier." Thus, under the statute, the longest period of time that Defendant will need to wait before filing his motion is 30 days. (not 70 days, as Defendant asserts). This 30-day exception to the statutory exhaustion requirement already provides a built-in "accelerant to judicial review," which "reflects congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released." *United States v. Russo*, No. 16-cr-00441, 2020 U.S. Dist. LEXIS 59223, at *6-7 (S.D.N.Y. Apr. 3, 2020). Second, it makes sense to apply the section 3582(c)(1)(A) exhaustion requirement—even in cases of an "emergency nature"—in light of the fact that "the BOP is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *Id.* at *6. Thus, the 30-day time period is "consistent with one of the bedrock principles underlying administrative exhaustion—to permit the agency, with its expertise and with its responsibility over the movant, to make a decision in the first instance." *Id.*

Simply put, the FSA does not provide this Court with the authority to excuse Defendant's failure to exhaust his administrative remedies or to waive the 30-day waiting period.[3] Indeed, to hold otherwise would contravene well-settled principles set forth in the Supreme Court's decisions in *Ross* and *Booth*. I note that, just within the last week, a majority of district courts across the country have so interpreted the FSA in a similar fashion as I have done so here. *See United States v. Holden*, No. 13-00444, 2020 U.S. Dist. LEXIS 60123, at *19 (D. Or. Apr. 6, 2020); *Gross*, 2020 U.S. Dist. LEXIS 60554, at *5-6 (finding that judicial waiver of the FSA exhaustion requirement

---

[3] While the Government advocates that the failure to exhaust under the FSA deprives this Court of subject matter jurisdiction to entertain Defendant's § 3582(c) motion, I need not address that issue, since I find that I have no authority under the FSA to waive exhaustion. Indeed, as the Government admits, this distinction is merely an academic one on this motion, particularly since the Government has not waived the exhaustion requirement under the statute.

is not available because "[n]ot only does the First Step Act explicitly circumscribe judicial review, requiring a defendant to first fully exhaust all administrative rights, but it also provides a built-in futility exception in the form of the 30-day rule"); *United States v. Johnson*, No. 14-0441, 2020 U.S. Dist. LEXIS 59206, at *2 (D. Md. Apr. 3, 2020)("the [FSA] does not provide any exceptions to these exhaustion requirements, and this Court may not create one by judicial order"); *United States v. Sundblad*, No. 16-0047, 2020 U.S. Dist. LEXIS 59193, at *4-5 (D.S.C. Apr. 3, 2020)("since Defendant has failed to exhaust her administrative remedies, the court does not possess authority to grant relief under § 3582(c)(1)(A)(i)"); *United States v. Eberhart*, No. 13-313, 2020 U.S. Dist. LEXIS 51909, at *4 (N.D. Cal. Mar. 25, 2020)("[b]ecause defendant has not satisfied the exhaustion requirement, the court lacks authority to grant relief under § 3582(c)(1)(A)(i)"); *United States v. Valenta*, No. 15-161, 2020 U.S. Dist. LEXIS 60770, at *3 (W.D. Pa. Apr. 7, 2020)(finding that a failure to exhaust administrative remedies is fatal to defendant's motion for compassionate release under the FSA); *United States v. Rivers*, No. 17-0023, 2020 WL 1676798 (D.V.I. Apr. 6, 2020); *United States v. Mills,* No. 02-115, 2019 U.S. Dist. LEXIS 10954, at *2-3 (M.D. Fla. Jan. 23, 2019)("[t]o take advantage of the First Step Act's compassionate release provision, Mills must file a new request for compassionate release with the warden of his facility and follow the procedures to exhaust his right of administrative review); *United States v. Alam*, No. 15-20351, 2020 U.S. Dist. LEXIS 61588, at *7 (E.D. Mich. Apr. 8, 2020); *United States v. Perry*, 2020 WL 1676773, at *1 (D. Colo. April 3, 2020)(concluding that defendant's argument that the court could read an exception into the exhaustion requirement was "unpersuasive" and "unsupported by case law"); *United States v. Carver*, 2020 WL 1604968, at *1 (E.D. Wash. April, 1, 2020)(stating "the administrative exhaustion requirement admits of no exception[,] and "[t]he Court's hands are bound by the statute."); *United States v. Rivers*, 2020 WL

1676798 (D.V.I. Apr. 6, 2020); *United States v. Villanueva*, No. 18-472, 2020 U.S. Dist. LEXIS 61908, at *8 (S.D.N.Y. Apr. 8, 2020); *United States v. Perry*, No. 14-003, 2020 U.S. Dist. LEXIS 61853, at *1-2 (W.D. Va. Apr. 8, 2020); *United States v. Albertson*, No. 16-0250, 2020 U.S. Dist. LEXIS 61744, at *2-3 (S.D. Ind. Apr. 8, 2020); *United States v. Hays*, No. 18-088, 2020 U.S. Dist. LEXIS 60993, at 3-4 (S.D. Ala. Apr. 7, 2020).[4]

In this case, Defendant, admittedly, has not exhausted his administrative remedies under Section 3582(c)(1)(A). While I acknowledge the very real danger posed by the COVID-19 pandemic, constrained by the existing statutory authority, I cannot waive the exhaustion requirement under the FSA. As such, because Defendant has not exhausted his administrative remedies, this Court does not possess the authority to grant relief under the statute. Defendant's motion for compassionate release is denied without prejudice to Defendant to renew his petition when he exhausts all avenues of administrative remedies, or if he receives no response within 30 days of his request to the Bureau of Prisons.

## III. <u>CONCLUSION</u>

The Government represents in its submission that in recent days, the Bureau of Prisons has been granted wide latitude to designate inmates for home confinement in an effort to alleviate the health risks posed to certain prison populations. In that connection, the Attorney General has

---

[4] I recognize that there are a few district courts that, in light of the COVID-19 pandemic, have waived the FSA's exhaustion requirement. For example, the court in *United States v. Perez*, No. 17-00513, 2020 U.S. Dist. LEXIS 57265 (S.D.N.Y. Apr. 1, 2020), did so by relying on *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). I do not find *Perez* persuasive, because *Barr* dealt only with a judicially created exhaustion requirement, not a statutory one. The same fundamental flaw exists in *United States v. Zukerman*, No. 16-194, 2020 U.S. Dist. LEXIS 59588 (S.D.N.Y. Apr. 3, 2020) and *United States v. Colvin*, No. 19-179, 2020 U.S. Dist. LEXIS 57962 (D. Conn. Apr. 2, 2020). Accordingly, I find that these decisions are inconsistent with the text of § 3582(c)(1)(A) and the Supreme Court's *Ross* decision. *See Alam*, 2020 U.S. Dist. LEXIS 61588 at *7.

permitted the Bureau of Prisons to, in a case of emergency, lengthen the maximum amount of time for which it is authorized to place a prisoner in home confinement. Such authority, according to the Government, will be exercised in facilities that have seen the greatest incidence of coronavirus transmission. In that regard, under the FSA, the Court must afford the Bureau of Prisons—at most 30 days—to make the necessary determinations, in the first instance, with regard to compassionate releases. While Defendant's argument that the spread of COVID-19 at his facility may worsen pending an administrative decision is well taken by the Court, it is ultimately Congress that must act to provide some relief from the statute's strict proscription, and to address the emergent need of inmates during this pandemic. *See, e.g.*, the Coronavirus Aid, Relief, and Economic Security Act.

For the foregoing reasons, Defendant's motion is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: April 9, 2020 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge